2012 COA 114

**Brandon McLAUGHLIN; Michael McLaughlin; and Selina McLaughlin, Plaintiffs–Appellees,**

v.

**Christopher OXLEY; Ricardo Sison; and Ability Specialists, Inc., Defendants–Appellants.**

No. 11CA1136.

Colorado Court of Appeals, Div. VII.

July 5, 2012.

Rehearing Denied Aug. 23, 2012.

McDermott & McDermott, LLP, Sean M. McDermott, Denver, Colorado, for Plaintiffs–Appellees.

Hall & Evans, L.L.C., Alan Epstein, Lisa F. Mickley, Andrew D. Ringel, Jessie L. Pellant, Denver, Colorado, for Defendants–Appellants.

Opinion by Judge TERRY.

¶ 1 In this negligence action, defendants, Christopher Oxley, Ricardo Sison, and Ability Specialists, Inc., appeal the trial court's order, ruling that they are not immune under section 13–21–117.5, C.R.S.2011, from the suit brought by plaintiffs, Brandon

McLaughlin, Michael McLaughlin, and Selena McLaughlin. We reverse the court's order and remand for entry of judgment against plaintiffs.

## I. Background

¶ 2 For purposes of this appeal, the following facts are not disputed.

¶ 3 Michael McLaughlin and Selena McLaughlin retained Ability to provide services to assist in the care of their developmentally disabled son, Brandon, who at the time of the incident in question was twenty-one years old. As part of these services, Christopher Oxley, an employee of Ability, was supervising Brandon at Oxley's home, while Oxley's own seven-year-old son, B.O., was present. Brandon and B.O. were left unattended together for a period of time, during which Brandon put B.O. in a "spanking position," pulled down B.O.'s pants, and kissed him. Oxley informed his superiors at Ability, who then called the police to investigate the matter. The police arrested Brandon and charged him with sexual assault on a child. The criminal case was dismissed after Brandon was found incompetent to proceed.

¶ 4 Plaintiffs later filed suit against defendants, alleging separate claims of negligence against Ability and Oxley. A third claim for relief alleging false imprisonment is not at issue in this appeal. Plaintiffs sought damages for lost income, emotional stress, and discomfort resulting from the filing of criminal charges against Brandon.

¶ 5 Defendants moved for summary judgment on all claims, arguing that the negligence claims should be dismissed because defendants are immune from liability under section 13–21–117.5(4) and (6), C.R.S.2011. The trial court denied the motion.

¶ 6 Defendants appeal under section 13–21–117.5(3), C.R.S.2011. That section states that a trial court's decision as to whether a provider of services to persons with developmental disabilities is immune from liability "shall be a final judgment and shall be subject to interlocutory appeal." § 13–21–117.5(3).

## II. Standard of Review

¶ 7 Under 13–21–117.5(3), a trial court could, in an appropriate case, enter summary judgment as to whether a party is immune from liability. The trial court did not do so here. We review de novo whether the court should have entered summary judgment as to such statutory immunity.

¶ 8 Summary judgment is appropriate only if the pleadings, affidavits, depositions, or admissions in the record establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. C.R.C.P. 56(c); *Nelson v. Gas Research Inst.*, 121 P.3d 340, 343 (Colo. App.2005).

¶ 9 Statutory interpretation is also a question of law that we review de novo. *Klinger v. Adams County Sch. Dist. No. 50*, 130 P.3d 1027, 1031 (Colo.2006). When interpreting a statute, our task is to give effect to the intent of the General Assembly. *Id.* We avoid interpreting a statute in a way that would defeat that intent. *Id.*

¶ 10 To determine legislative intent, we look first to the plain language of the statute. *State v. Nieto*, 993 P.2d 493, 500 (Colo.2000). We read words and phrases in context and construe them literally according to common usage. *People v. Yascavage*, 101 P.3d 1090, 1093 (Colo.2004). Where the language is clear and unambiguous, we need not look further. *Klinger*, 130 P.3d at 1031. However, where the language is ambiguous, we rely on other factors such as legislative history, the consequences of a given construction, the legislative declaration of purpose, and the end to be achieved by the statute. *Id.; Yascavage*, 101 P.3d at 1093; *see* § 2–4–203(1)(c), C.R.S.2011 (the court may consider the legislative history in determining the intention of the General Assembly).

## III. Statutory Overview

¶ 11 The General Assembly enacted section 13–21–117.5 to "mitigate the risk of liability to providers to the developmentally disabled to the extent that such mitigation is reasonable and possible." § 13–21–117.5(1)(b), C.R.S.2011. Such mitigation was deemed necessary because

providers to [developmentally disabled] persons are exposed to risk of liability

when they assist or permit persons with developmental disabilities to experience community integration, participation, and self-direction; ... providers provide essential services and functions[,] and ... unlimited liability could disrupt or make prohibitively expensive the provision of such essential services.

§ 13–21–117.5(1)(a)(III)–(IV), C.R.S.2011; *see also J.C. v. Dungarvin Colorado, LLC,* 252 P.3d 41, 43 (Colo.App.2010) (under § 13–21–117.5(4), C.R.S.2011, the provision of services to a person with developmental disabilities does not impose upon a provider a duty of care with respect to third persons, unless expressly imposed by federal or state law).

¶ 12 In keeping with this statutory purpose, section 13–21–117.5(6) grants providers immunity from liability in certain circumstances. Subsection (6) states· in pertinent part:

A provider shall not be liable for damages in any civil action for failure to warn or protect any person against the violent, assaultive, disorderly, or harassing behavior of a person with a developmental disability, nor shall any such provider be held civilly liable for failure to predict or prevent such behavior, except there shall be a duty to warn where the person with the developmental disability has communicated to the provider a serious and credible threat of imminent physical violence and serious bodily injury against a specific person or persons.

## IV. Discussion

¶ 13 Defendants contend the trial court erred in ruling that section 13–21–117.5(6) does not apply to the circumstances of this case. We agree.

¶ 14 The trial court ruled that subsection (6) is designed to immunize a provider only against civil actions initiated by a victim of a developmentally disabled person's assaultive behavior. The court reasoned that, because plaintiffs filed suit regarding harm to the developmentally disabled person—Brandon—rather than harm to the victim of Brandon's behavior—B.O.—the immunity provision of subsection (6) does not apply to defendants. This interpretation of subsection (6) was in error.

■■ ¶ 15 As relevant here, subsection (6) states that a provider shall not be liable for damages "in any civil action" for "failure to predict or prevent" the "assaultive, disorderly, or harassing" behavior of a person with a developmental disability. The plain language of subsection (6) immunizes a provider from suit in *any* civil action alleging the specified conduct, without limiting the potential plaintiffs. *See Nieto,* 993 P.2d at 500 (where the plain language of the statute is clear and unambiguous, "the statute should be construed as written, giving full effect to the words chosen, as it is presumed that the General Assembly meant what it clearly said").

¶ 16 The trial court noted that plaintiffs are claiming that the harm occurred to Brandon when he was arrested for sexual assault. However, plaintiffs have alleged that Oxley was negligent for failing to (1) supervise Brandon, (2) provide one-on-one services to him, and (3) provide him with a reasonably safe environment. Plaintiffs alleged that Ability was negligent for failing to train its employees and establish adequate procedures to deal with the type of situation that occurred here, and failing to communicate with its employees what services and care were to be provided to Brandon. When these allegations are combined with the undisputed facts, it is clear that the dangers against which defendants were allegedly supposed to have protected Brandon were his own inappropriate contact with B.O. and the ensuing arrest. Thus, plaintiffs' allegations are based on defendants' "failure to predict or prevent" Brandon's behavior, as described in subsection (6).

¶ 17 We note that plaintiffs' answer brief contains a section titled "Statement of Issues," in which they state that there is no evidence of Brandon engaging in assaultive or inappropriate behavior. However, nowhere do plaintiffs elaborate on, support, or explain this statement. *Cf. People v. Graybeal,* 155 P.3d 614, 620 (Colo.App.2007) (discussing appellant's failure to address an issue in the opening brief that was mentioned in the "Statement of Issues").

■■■ ¶ 18 In any event, it is undisputed that Brandon put B.O. in a "spanking posi-

tion," pulled down B.O.'s pants, and kissed him. This behavior resulted in Brandon being charged with sexual assault. We conclude that such behavior falls within the meaning of "assaultive, disorderly, or harassing behavior" in subsection (6). Accordingly, we conclude defendants are immune from liability under subsection (6).

¶ 19 Defendants also contend the trial court erred in finding that Michael McLaughlin and Selena McLaughlin were owed a duty of care because they are not third parties under section 13–21–117.5(4). Because we conclude defendants are not liable for damages to plaintiffs under section 13–21–117.5(6), we need not address this issue.

¶ 20 The order is reversed, and the case is remanded to the trial court for entry of summary judgment in favor of defendants.

Judge BOORAS and Judge FOX concur.