The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
May 2, 2019

## 2019COA63

**No. 17CA1372, *People v. Harrison* — Criminal Law — Affirmative Defenses — Immunity for Persons Who Suffer or Report an Emergency Drug or Alcohol Overdose Event**

A division of the court of appeals considers whether there was sufficient evidence to disprove defendant's immunity under section 18-1-711, C.R.S. 2018, which provides immunity from arrest or prosecution for those who suffer or report an emergency drug or alcohol overdose. Interpreting the statute's plain language for the first time in a published opinion, the division concludes that section 18-1-711(5) defines an "emergency drug or alcohol overdose event" under a reasonable person standard, considering what a layperson would reasonably believe to be a drug or alcohol overdose that requires medical assistance at the time the 911 call is made. Thus, the division concludes that neither the subjective belief of the

person reporting the overdose event (as to whether an overdose is in fact occurring), nor events that occur after the 911 call is made (such as the defendant's ultimate need for medical assistance) are relevant to determining whether the defendant is immune under the statute.

Applying the objective definition contained in section 18-1-711(5) to the facts of this case, the division concludes the prosecution presented no relevant evidence to disprove that an emergency drug overdose was reported, leading to defendant's arrest. Accordingly, the division finds insufficient evidence to disprove defendant's immunity from prosecution under section 18-1-711 and thus vacates defendant's convictions.

COLORADO COURT OF APPEALS                **2019COA63**

---

Court of Appeals No. 17CA1372
Jefferson County District Court No. 16CR3708
Honorable Christopher C. Zenisek, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Brittany Page Harrison,

Defendant-Appellant.

---

JUDGMENT VACATED

Division III
Opinion by JUDGE ROMÁN
Webb and Freyre, JJ., concur

Announced May 2, 2019

---

Philip J. Weiser, Attorney General, Trina K. Taylor, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Jessica Sommer, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     Defendant, Brittany Page Harrison, appeals the judgment of conviction entered after a jury found her guilty of possession of a controlled substance and possession of drug paraphernalia. Because we conclude the evidence at trial was insufficient to disprove the affirmative defense of immunity for persons suffering a drug overdose under section 18-1-711, C.R.S. 2018, we vacate the judgment.

## I.     Background

¶ 2     Defendant and her friend, A.M., entered a Burger King restaurant, ordered a meal, and sat down at a booth. About an hour and a half later, staff at the restaurant noticed defendant and A.M. had not touched their food and were slumped over each other, "asleep." An employee made multiple attempts to wake them by yelling at them, shaking them, and banging on the table. Still, defendant and A.M. did not move or open their eyes. A short while later, the general manager called 911 because she was "concerned for their well-being" and worried "something [could] be wrong."[1]

---

[1] The general manager did not specify exactly how much time lapsed between her staff's first attempt to wake defendant and when she called 911. However, she testified that after the first attempt,

¶ 3     When a police corporal arrived, defendant and A.M. were still unconscious. However, the corporal was able to wake defendant by announcing himself and shaking her forcefully. At that point, defendant was sluggish and confused. Because A.M. still did not wake up, the corporal called paramedics.

¶ 4     Defendant gave the corporal her identification and told him that she had not used drugs that day. But, a second police officer arrived on the scene and noticed defendant "looked to be under the influence of some substance."

¶ 5     Defendant gave the corporal permission to search her purse. He found a baggie with a tar-type substance in it, a syringe, a spoon, a torch, and tin-foil with burn marks. The substance in the baggie later tested positive for heroin.

¶ 6     Defendant also consented to a search of her backpack, which contained two glass pipes, a lighter, butane fluid, two butane torches, aluminum foil, and another baggie containing a powdery substance that later tested positive for methamphetamine.

---

she and her employee "went on a little bit," then tried to wake them again. It was after this second attempt to wake defendant and A.M. that the manager called 911.

¶ 7 When paramedics arrived, A.M., who was still unconscious, was taken to the hospital. Defendant was taken into custody.

¶ 8 The prosecution charged defendant with two counts of possession of a controlled substance and one count of possession of drug paraphernalia.

¶ 9 The jury convicted defendant as charged.

## II. Standard of Review and Legal Authority

¶ 10 The prosecution must prove all elements of a crime beyond a reasonable doubt to satisfy due process. *Montez v. People*, 2012 CO 6, ¶ 21 (citing U.S. Const. amend. XIV, § 1; Colo. Const. art. II, § 25). This includes the burden of disproving "issues involved in affirmative defenses." *Montoya v. People*, 2017 CO 40, ¶ 24; *see also People v. Pickering*, 276 P.3d 553, 555 (Colo. 2011) (noting that an affirmative defense "admit[s] the defendant's commission of the elements of the charged act, but seek[s] to justify, excuse, or mitigate the commission of the act"). That is, "if presented evidence raises the issue of an affirmative defense, the affirmative defense effectively becomes an additional element, and . . . the prosecution bears the burden of proving beyond a reasonable doubt that the affirmative defense is inapplicable." *Pickering*, 276 P.3d at 555.

3

¶ 11    Section 18-1-711 provides an affirmative defense, under certain circumstances, for persons who suffer or report an emergency drug or alcohol overdose.  For this affirmative defense to apply, the following conditions must be met:

> (1)  The person reports in good faith an emergency drug or alcohol overdose event to a law enforcement officer, to the 911 system, or to a medical provider;
>
> (2)  The person remains at the scene of the event until a law enforcement officer or an emergency medical responder arrives or the person remains at the facilities of the medical provider until a law enforcement officer arrives;
>
> (3)  The person identifies himself or herself to, and cooperates with, the law enforcement officer, emergency medical responder, or medical provider; and
>
> (4)  The offense arises from the same course of events from which the emergency drug or alcohol overdose event arose.

§ 18-1-711(1)(a)-(d).  As long as these conditions are met, immunity extends to both the person who called 911 and "to the person who suffered the emergency drug or alcohol overdose event." § 18-1-711(2).

4

¶ 12    An "emergency drug or alcohol event" is defined as:

> an acute condition including, but not limited
> to, physical illness, coma, mania, hysteria, or
> death resulting from the consumption or use
> of a controlled substance, or of alcohol, or
> another substance with which a controlled
> substance or alcohol was combined, and that a
> layperson would reasonably believe to be a
> drug or alcohol overdose that requires medical
> assistance.

§ 18-1-711(5).

¶ 13    We review the record de novo to determine whether the evidence before a jury was sufficient both in quantity and quality to sustain a conviction. *Dempsey v. People*, 117 P.3d 800, 807 (Colo. 2005). In doing so, we must "determine whether the evidence, viewed in the light most favorable to the prosecution, was both substantial and sufficient to support the conclusion by a reasonable mind that the defendant was guilty beyond a reasonable doubt." *People v. Griego*, 2018 CO 5, ¶ 24.

¶ 14    "An appellate court is not permitted to act as a 'thirteenth juror' and set aside a verdict because it might have drawn a different conclusion had it been the trier of fact." *People v. Arzabala*, 2012 COA 99, ¶ 13 (citation omitted). Instead, we afford the prosecution the benefit of every reasonable inference that might

be fairly drawn from the evidence and, where reasonable minds could differ, deem the evidence sufficient to sustain a conviction. *People v. Kessler,* 2018 COA 60, ¶ 12.

¶ 15    Issues of statutory construction are also reviewed de novo. *People v. Smith,* 254 P.3d 1158, 1161 (Colo. 2011). When interpreting a statute, our primary task is to ascertain and give effect to the intent of the General Assembly. *People v. Diaz,* 2015 CO 28, ¶ 12. To determine legislative intent, we first examine the plain language of the statute. *Klinger v. Adams Cty. Sch. Dist. No. 50*, 130 P.3d 1027, 1031 (Colo. 2006). "We read words and phrases in context and construe them literally according to common usage unless they have acquired a technical meaning by legislative definition." *Id.* If the language is clear and unambiguous, no further analysis is needed. *Id.*

### III.    Discussion

¶ 16    It is undisputed that police discovered defendant in possession of controlled substances and drug paraphernalia after the manager called 911 out of concern for defendant's well-being. The manager testified that her employee banged loudly on the table in an effort to wake defendant and A.M., but they did "not even [f]linch." At that

6

point, her "motherly instinct" gave her "concerns that something was wrong," and she thought "maybe we need to get help." She "called 911 and explained that . . . [she] could not wake [defendant and A.M.] up and [she] was concerned for their well-being." Based on these facts, the trial court agreed to instruct the jury on the affirmative defense of immunity for persons who suffer an emergency drug or alcohol overdose event. The jury found defendant guilty.

¶ 17    On appeal, defendant asserts that there was insufficient evidence to support the jury's verdict because the prosecution failed to meet its burden of disproving the applicability of section 18-1-711. Specifically, defendant argues the prosecution did not disprove any of the following requirements: (1) that the manager made a good faith report of an emergency drug overdose event, as it is defined under section 18-1-711(5); (2) that the manager remained at the scene until police arrived; (3) that the manager cooperated with law enforcement; or (4) that the charged offenses arose out of the same course of events as the overdose event.

¶ 18    Importantly, only the first element of the immunity statute is disputed here. The People do not dispute that the manager called

911 in good faith, remained at the scene, and cooperated with law enforcement, nor that defendant's charges arose from the underlying overdose event. Instead, the People argue that the evidence was substantial and sufficient to disprove the first condition of section 18-1-711(1)(a) — namely, that the manager reported an "emergency drug or alcohol overdose event," as it is defined under subsection (5) of the immunity statute.

¶ 19    Even applying the deferential standard in favor of the prosecution involved in sufficiency of the evidence review, *see United States v. Bevans*, 117 F.3d 1429 (10th Cir. 1997), we agree with defendant that the evidence was insufficient to sustain her convictions.

¶ 20    Viewed in the light most favorable to the prosecution, the evidence at trial showed the following:

- When defendant and A.M. entered the Burger King and ordered food, nothing about them stood out to the manager except that they were young, had backpacks, and "looked tired."

- But, after discovering defendant and A.M. asleep and unresponsive, the manager became worried and called 911.

- When asked whether she called 911 in "panic mode," the manager testified that she called for assistance because she did not know what to do.

- The manager did not have prior experience with anyone on drugs or alcohol and it "never really crossed [her] mind" that defendant was experiencing a drug overdose.

- The call was dispatched to 911 as a "welfare check."

- Paramedics were not initially dispatched to the scene, and defendant did not receive medical attention.

- The corporal was able to wake defendant and by the time the second officer arrived, defendant was eating a hamburger and answering police questions.

- After police arrived, the manager assumed the situation "was okay."

¶ 21 Drawing every reasonable inference from these facts in the light most favorable to the prosecution, we conclude the evidence showed that (1) the manager did not subjectively believe an

9

emergency overdose was occurring when she called 911 and (2) defendant did not ultimately require medical attention. Nonetheless, we conclude the evidence was insufficient to disprove the manager's report of an emergency overdose event in this case.

¶ 22    First, section 18-1-711(5) defines an "emergency drug or alcohol overdose event" *objectively*, based on what "a layperson would reasonably believe to be a drug or alcohol overdose that requires medical assistance." *See* Black's Law Dictionary 1624 (10th ed. 2014) (defining an "objective standard" as "[a] legal standard that is based on conduct and perceptions external to a particular person" and a "subjective standard" as "[a] legal standard that is peculiar to a particular person and based on the person's individual views and experiences"). Therefore, the manager's subjective knowledge or ignorance about the cause of defendant's condition is not relevant to the applicability of section 18-1-711(5). *See J.D.B. v. North Carolina*, 564 U.S. 261, 271 (2011) (holding that where police are required to examine circumstances that "'would have affected how a reasonable person' in the suspect's position 'would perceive his or her freedom to leave,' . . . . 'the 'subjective views harbored by either the interrogating officers or the person

10

being questioned' are irrelevant") (citation omitted). Rather, under the statute's plain language, immunity must apply so long as the person reporting the event reports in good faith an "acute condition" that a *reasonable person* would believe to be a drug or alcohol overdose.

¶ 23    To read section 18-1-711(5) differently — such as to require the person reporting the overdose to subjectively perceive an emergency overdose — would necessitate reading terms into the statute "that simply are not there." *People v. Benavidez*, 222 P.3d 391, 393-94 (Colo. App. 2009) (emphasizing that "in interpreting a statute, we must accept the General Assembly's choice of language"). This is particularly inappropriate given that the legislature expressly included a subjective requirement in an adjacent section of the immunity statute at issue in this case. Specifically, section 18-1-712(2), C.R.S. 2018, grants immunity for persons administering an opiate antagonist "to an individual *the person believes to be* suffering an opiate-related drug overdose event." (Emphasis added.) *See United States v. Pauler*, 857 F.3d 1073, 1077 (10th Cir. 2017) ("[D]rawing meaning from silence is particularly inappropriate . . . [when] Congress has shown that it

11

knows how to [address an issue] in express terms." (quoting *Kimbrough v. United States*, 552 U.S. 85, 103 (2007))).[2]

¶ 24    Second, and likewise, events that occurred *after* the manager's 911 call are irrelevant to the jury's determination of whether a reasonable person would have perceived a drug overdose event *at the time the 911 call was made*. Section 18-1-711(1)(a) only requires that the person reporting the overdose event do so "in good faith," based on the caller's state of mind at the time of the 911 call. *See* Black's Law Dictionary 808 (10th ed. 2014) (defining "good faith" as "[a] state of mind consisting in . . . honesty in belief or purpose . . . or . . . absence of intent to defraud or to seek unconscionable advantage"); *see also People v. Randolph*, 4 P.3d 477, 483 (Colo. 2000) (noting, in the context of the admissibility of

---

[2] Notably, other states have also chosen to include a subjective requirement in their drug overdose immunity statutes. *See* Conn. Gen. Stat. § 21a-267(e)(2) (West 2011) (providing immunity to any person "for whom another person, in good faith, seeks medical assistance, *reasonably believing* such person is experiencing an overdose") (emphasis added); Vt. Stat. Ann. tit. 18, § 4254(a)(1) (2018) (defining "drug overdose" as "an acute condition resulting from *or believed to be* resulting from the use of a regulated drug that a layperson would reasonably believe requires medical assistance") (emphasis added).

12

evidence seized by police, that a "'[g]ood faith mistake' means a reasonable judgmental error concerning the existence of facts . . . which *if true* would be sufficient" to meet the legal requirement (quoting § 16-3-308, C.R.S. 2018)) (emphasis added). Thus, evidence of defendant's condition *after police arrived* — including that she did not ultimately require medical attention — is not sufficient to disprove her immunity as an affirmative defense.

¶ 25    In other words, the only *relevant* evidence to aid the jury in determining whether section 18-1-711 applied was that, at the time the manager called 911, defendant had entered the restaurant, ordered her food, and then become unconscious and unresponsive for a prolonged period. Although the jury was entitled to determine whether a reasonable person would perceive a drug overdose event under these circumstances, we conclude the evidence was insufficient to support a fair-minded conclusion that this element was not met. *See People v. Perez*, 2016 CO 12, ¶ 24 ("Evidence is sufficient to sustain a conviction if the quantity and quality of the *relevant* evidence would support a fair-minded jury's finding 'that the guilt of the accused has been established beyond a reasonable doubt with regard to each essential element of the crime.'" (quoting

*People v. Gonzales*, 666 P.2d 123, 17-28 (Colo. 1983))) (emphasis added).

¶ 26 Specifically, even viewing the facts in the prosecution's favor, we conclude a layperson would have reasonably concluded that defendant was suffering an acute condition caused by a drug or alcohol overdose. Section 18-1-711(5) specifically includes a "coma" among the nonexclusive list of acute conditions that can be caused by an "emergency drug or alcohol overdose event." *See People v. Delgado*, 153 Cal. Rptr. 3d 260, 266 (Cal. Ct. App. 2013) ("[A] coma is defined as 'profound unconsciousness caused by disease, injury, or poison.'" (quoting Merriam-Webster's Collegiate Dictionary 246 (11th ed. 2006))); *see also* Merriam-Webster's Dictionary, https://perma.cc/66JJ-TNVS (defining "acute" as "characterized by sharpness or severity of sudden onset").

¶ 27 True, other medical conditions may cause unresponsiveness such as displayed by defendant and her companion. But the prosecution did not present any evidence of the range or prevalence of such conditions, especially among young people. Instead, the jury was left to consider — unaided by expert testimony — what a reasonable person would believe had caused two young people

sitting together to lapse into unconsciousness simultaneously, at mid-morning, and in a public place. In an era of chronic opioid abuse, the prosecution was required to do more than argue inferences. *See* Centers for Disease Control and Prevention, Opioids Portal, https://perma.cc/7SEY-VBVD (noting that drug overdoses are "a leading cause of injury-related death in the United States" and that "[o]f those deaths, almost 68% involved a prescription or illicit opioid").

¶ 28     For these reasons, we conclude the evidence at trial was insufficient to disprove that a reasonable person in the manager's position would have believed that an "emergency drug or alcohol overdose event" may be occurring.

¶ 29     Because the prosecution did not meet its burden to prove the inapplicability of the affirmative defense of immunity under section 18-1-711 in this case, we vacate defendant's convictions. *See Pickering*, 276 P.3d at 555.

¶ 30     In light of this determination, we need not address defendant's remaining contentions on appeal.

IV.   Conclusion

¶ 31     The judgment is vacated.

JUDGE WEBB and JUDGE FREYRE concur.