**EAGLE RIDGE CONDOMINIUM ASSOCIATION, Plaintiff–Appellee,**

v.

**METROPOLITAN BUILDERS, INC. and 370 Development, LLC, f/k/a Raccoon Development LLC, Defendants–Appellants.**

No. 03CA0805.

Colorado Court of Appeals, Div. II.

March 11, 2004.

As Modified on Denial of Rehearing April 8, 2004.

Certiorari Granted Oct. 18, 2004.

§ 24–51–1105, C.R.S.2003.

Holland & Hart LLP, Joseph W. Halpern, Teresa D. Locke, Denver, Colorado; McKenzie Rhody & Hearn, LLC, R. Christopher Rhody, Michael A. Hearn, Andrew M. Karr, Denver, Colorado, for Plaintiff–Appellee.

Fowler, Schimberg & Flanagan, P.C., Daniel M. Fowler, Catherine A. Tallerico, Katherine Taylor Eubank, Denver, Colorado, for Defendants–Appellants.

Opinion by Justice ERICKSON.*

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2003.

This is an action for damages for construction defects in the Eagle Ridge condominium complex. The defendant builders, Metropolitan Builders, Inc. (general contractor) and 370 Development, LLC (developer), appeal the trial court's order denying their motion to compel arbitration with the Eagle Ridge Condominium Association (association). Beacon Hill Investments, Inc., another defendant in the trial court, did not appeal. We affirm.

### I.

In 1997, builders formed the association to own, operate, and maintain the common areas of the complex. The association is composed of and represents all owners of individual units in the complex.

Builders also adopted bylaws for the association, which included procedures to amend the bylaws and to submit to arbitration any construction defect claims against builders.

Builders constructed Eagle Ridge in 1998 and sold individual units to homeowners. The sales contracts to the original owners included an arbitration clause.

In 2002, the association amended its bylaws to remove the arbitration provision. The association then filed this action, on its own behalf and on behalf of its members, against builders for numerous building defects and asserted claims for negligence, breach of warranty, negligent misrepresentation, breach of fiduciary duty, breach of contract, and violation of the Colorado Consumer Protection Act, § 6–1–105, C.R.S.2003.

Builders answered, denied the association's material allegations, and asserted affirmative defenses. Builders later filed a motion in the trial court to compel arbitration under § 13–22–204, C.R.S.2003, which the trial court denied. This appeal followed.

An order denying a motion to compel arbitration is immediately appealable. Section 13–22–221(1)(a), C.R.S.2003; *Mountain Plains Constructors, Inc. v. Torrez*, 785 P.2d 928 (Colo.1990).

### II.

Builders contend the trial court erred in denying their motion to compel arbitration. They maintain that there was a valid arbitration agreement when the association's claims arose, and they rely on arbitration clauses in (1) the association bylaws and (2) the individual unit sales contracts. We disagree.

In considering a motion to compel, the trial court must first determine whether a valid agreement to arbitrate exists between the parties to the action. Section 13–22–204(1), C.R.S.2003; *Eychner v. Van Vleet*, 870 P.2d 486 (Colo.App.1993).

The court may refuse to compel arbitration "only upon a showing that there is no agreement to arbitrate or if the issue sought to be arbitrated is clearly beyond the scope of the arbitration provision." *Eychner v. Van Vleet, supra*, 870 P.2d at 489 (quoting *Shorey v. Jefferson County Sch. Dist. No. R–1*, 807 P.2d 1181, 1183 (Colo.App.1990)); *see* § 13–22–204(1).

To determine whether the parties agreed or intended to submit an issue to arbitration, the ordinary principles of contract interpretation apply. In determining that intent, the court must examine the wording of the arbitration clause and accord its terms their plain and ordinary meanings. The scope of an arbitration clause must faithfully reflect the reasonable expectations of the parties. *See City & County of Denver v. Dist. Court*, 939 P.2d 1353 (Colo.1997); *Gergel v. High View Homes, LLC*, 996 P.2d 233 (Colo.App.1999).

A condominium association may exercise its powers only within the constraints of its condominium declaration and bylaws. *Lion Square Phase II & III Condo. Ass'n v. Hask*, 700 P.2d 932 (Colo.App.1985). A provision in a corporation's bylaws is a contract between the corporation and its shareholders. *See Fort Lyon Canal Co. v. Catlin Canal Co.*, 642 P.2d 501 (Colo.1982); *Paulek v. Isgar*, 38 Colo.App. 29, 551 P.2d 213 (1976).

A person who is not a party to the contract generally lacks standing to compel, and is not subject to, arbitration. A nonparty, such as a third-party beneficiary, may fall within the scope of an arbitration agreement and may bring an action on the contract if that is the intent of the parties. *Eychner v. Van Vleet, supra; see Everett v. Dickinson & Co.*, 929 P.2d 10 (Colo.App.1996)(intent to

benefit a third party must be apparent from the construction of the contract).

■ The arbitrability of a claim or issue is a question of law that we review de novo. *See Jefferson County Sch. Dist. No. R–1 v. Shorey*, 826 P.2d 830 (Colo.1992); *Eychner v. Van Vleet, supra.*

### A.

Builders contend that the arbitration clause in the association's bylaws is controlling. We disagree.

■ Article 10 of the bylaws, entitled "Construction Litigation Procedures," authorized the association board to assert a claim against "the Developer" for defects in the physical condition of any common element or any improvement or any other claim, subject to certain conditions. Article 10 contained the following arbitration clause:

> 10.7 Alternative Dispute Resolution. Any claim of a Defect ... shall, upon the demand of the Association or the Developer, be submitted to mediation or binding arbitration, subject to the following requirements:
> (a) if the parties cannot agree upon utilizing binding arbitration or mediation, but one of the parties wants to utilize an alternative dispute resolution method, binding arbitration shall be utilized.

On March 18, 2002, the association's board of directors by unanimous vote amended the bylaws to "delet[e] and withdra[w]" Article 10, including the arbitration provision. Three weeks later, on April 10, 2002, the association filed this action.

The trial court found: (1) builders "created the bylaws of the association before any units were sold to individual homeowners"; (2) builders included a means to amend the bylaws; (3) the association's ability to amend the bylaws unilaterally "creat[ed] a situation where the arbitration clause could be deleted without [builders'] consent"; and (4) the amendment was "fully operative." The trial court concluded that because the bylaws contained no provision that an amendment deleting the arbitration clause would be effective only as to disputes arising after such amendment, there was no binding agreement to arbitrate the claims in the association's complaint.

In the original bylaws, the association expressly provided that the "developer" may demand arbitration of disputes concerning defects, but the bylaws were amended to eliminate arbitration before the association made its claims, and the amendment removing the arbitration provision was effective.

We reject builders' claim that the amendment cannot be given effect because they never agreed that the arbitration provision would be "voidable" and never consented to the amendment. Builders admit that the bylaws could be amended by the association's directors. While the bylaws prohibited any amendment that affects security interests on any individual unit, there was no restriction on amending the building defects or arbitration provisions.

■ Arbitration provisions eliminated by subsequent amendment to the bylaws are binding without the members' consent and grant standing to the association. *Yacht Club II Homeowners Ass'n v. A.C. Excavating*, 94 P.3d 1177, 2003 WL 22722946 (Colo. App. No. 02CA0645, Nov. 20, 2003); *see Gear v. Webster*, 258 Cal.App.2d 57, 65 Cal.Rptr. 255 (1968)(rejecting contention that member was bound to bylaws as they existed at time she signed them); *McMillan v. Gold Kist, Inc.*, 353 S.C. 353, 577 S.E.2d 482 (S.C.Ct.App.2003)(rejecting contention that arbitration clause in bylaws was not binding because not agreed to).

Colorado's public policy favoring resolution of disputes through arbitration does not require a different result. We agree with builders that, under the Uniform Arbitration Act, § 13–22–201, et seq., C.R.S.2003, any doubts about the scope of an arbitration clause should be resolved in favor of arbitration. *See Austin v. U.S. West, Inc.*, 926 P.2d 181 (Colo.App.1996). However, in *City & County of Denver v. District Court, supra*, the supreme court held that in determining whether an agreement to arbitrate exists, we apply the ordinary principles of contract interpretation, and that holding is dispositive of the issue.

We also reject builders' contention that we must apply the bylaws in effect when the alleged defects underlying this action arose. The original bylaws required the association

to submit defect claims to arbitration upon builders' demand, which was a bylaw restriction upon the association's ability to act. Builders' ability to demand arbitration did not survive the removal of this restriction upon the association. *See Lion Square Phase II & III Condo. Ass'n v. Hask, supra.* The amendment of the bylaws eliminated the right to arbitration and was effective immediately. *See People ex rel. Orange County v. M.A.S.*, 962 P.2d 339, 341 (Colo.App.1998); *see also* R. Sandgrund & J. Smith, *When the Developer Controls the Homeowner Association Board: the Benevolent Dictator?*, 31 Colo. Law. 91 (Jan.2002).

*Metro East Center v. Qwest Communications International, Inc.*, 294 F.3d 924 (7th Cir.2002), does not require a different result. In *Metro East*, the Seventh Circuit considered whether an arbitration provision contained in a tariff, created by the defendant telephone carrier and filed with the Federal Communications Commission, was an agreement to arbitrate under the Federal Arbitration Act, 9 U.S.C. § 3 (2003). The court held that it was an agreement because it was an offer accepted by customers using the product. While describing tariffs as a "species of contract," the court stated that "by virtue of federal law a tariff is more conclusive than a contract and is said to have the *status of a regulation.*" *Metro E. Ctr. v. Qwest Communications Int'l, Inc., supra*, 294 F.3d at 926 (emphasis added). Our determination is guided by contract interpretation, and not federal statutory interpretation.

### B.

Builders also assert the arbitration provision contained in the individual purchase agreements as a basis for arbitration. Builders contend this provision requires arbitration of all claims against them and the association is bound to this provision as the representative, third-party beneficiary, and subrogee of its individual owners. The association contends that this provision is binding only as to the initial buyers whose contracts contain this term and that the intertwining doctrine precludes application of this term to the claims made here. We agree in part with the association.

We first reject the association's assertion that the issue was not properly raised in the trial court. Although builders raised the argument in their reply in support of their motion to compel, it was presented to the trial court before its determination of the motion, and we may address the issue. *See Town of Frederick v. N. Am. Res. Co.*, 60 P.3d 758 (Colo.App.2002). The trial court did not rule on this issue, but because it is jurisdictional and may arise after a trial on the merits, we address it. *See Mountain Plains Constructors, Inc. v. Torrez, supra* (order denying motion to compel may be appealed after trial on the merits).

If an arbitrable claim is joined with claims that are not arbitrable, and if the arbitrator would be required to review the same facts needed to establish the nonarbitrable claims, referral to arbitration should be denied, and the court should resolve all the claims asserted. However, if all claims fall within the scope of an arbitration clause, the intertwining doctrine does not apply. *Breaker v. Corrosion Control Corp.*, 23 P.3d 1278 (Colo.App.2001). *But see Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985)(intertwining doctrine not applicable under FAA).

Thus, in determining whether the intertwining doctrine applies, we must consider (1) whether any claims fall under the arbitration provision; and (2) whether any claims that are not subject to arbitration are so inextricably intertwined with those subject to arbitration as to prevent severance. *Gergel v. High View Homes, LLC, supra; see City & County of Denver v. Dist. Court, supra* (court must determine whether it is impractical to separate claims).

An association may assert claims in its own name on behalf of itself or two or more unit owners. Section 38–33.3–302(1)(d), C.R.S. 2003; *see* § 38–33.3–115, C.R.S.2003 (statutory scheme governs common interest communities generally); *Quinn v. Castle Park Ranch Prop. Owners Ass'n*, 77 P.3d 823 (Colo.App.2003).

Here, the record contains one purchase agreement between developer and an individual purchaser that states in relevant part:

All claims, disputes or other matters in controversy arising out of construction of the Unit ... or out of the construction of

any common elements or common area or in any other portion of the Community, shall be resolved by submission of such dispute or controversy to binding and mandatory arbitration. . . . Purchaser, for himself, his successors, assigns and for any person or entity that may be authorized by law or by contract to bring such a claim on his behalf, expressly waives all rights to resolve such claims, disputes or other matters relating to construction in a judicial forum. . . .

The parties do not dispute the applicability of the arbitration provision to certain claims against developer, and we conclude the individual unit owners' claims against builders, brought in the association's representative capacity, could be subject to arbitration under this provision. *See* § 38–33.3–302(1)(d). However, we need not determine whether all the association's claims against developer are subject to arbitration because none of the claims against general contractor are subject to arbitration.

General contractor is not a party to this contract, and the arbitration provision evidences no intent for general contractor to fall within its scope. General contractor cannot compel arbitration under this provision, and the arbitration clause does not apply to claims against it. *See Eychner v. Van Vleet, supra; see Everett v. Dickinson & Co., supra.*

We next must determine whether the claims against general contractor, which are not subject to arbitration, are so inextricably intertwined with those claims that are subject to arbitration as to prevent severance.

The association is the sole plaintiff in this action. In its complaint, it states that it "brings this action on its own behalf" and on behalf of its members. The complaint alleges all operative acts were committed by builders, without distinguishing developer's acts from the others', and further attributes the acts of one to the others: (1) both general contractor and developer were in the business of developing, constructing, and selling of units and common elements of the condominium complex; (2) they engaged in a joint venture; (3) each acted as the agent and alter ego of the other; and (4) builders, and each of them, are liable to the association under the association's seven claims for construction defects in the units and common elements of the condominium complex. The complaint does not distinguish between the common areas and individual units.

In builders' answer, they assert the affirmative defense of comparative negligence or fault of nonparties.

However, the arbitrator must necessarily consider the relationship and obligations of each defendant in determining which of them, if any, owed or breached a duty or contractual obligation. As to the association's tort claims, the arbitrator may be required to determine the existence of a nonparty at fault, the proportional fault of multiple parties, and the total extent of damages caused by each party. We therefore conclude the arbitrator would be required to review the same facts needed to establish the nonarbitrable claims, and severance of the claims would be impractical. Thus, the trial court should resolve all the association's claims.

Hence, the trial court did not err in denying builders' motion to compel arbitration. In light of our conclusion, we need not address builders' remaining contentions.

Order affirmed.

Judge NIETO and Judge PICCONE concur.