Lu, John T., J.
Introduction
George Bragel (Bragel), acting in his capacity as a trustee, alleges breach of contract, fraud and deceit, and violations of Chapter 93A, the Consumer Protection Act, by General Steel Corporation (General Steel) in the sale of a building to be erected at 1121 Dorchester Avenue, Dorchester. Bragel is a Trustee of the 1121 Realty Trust (Trust), which owns the property. General Steel is a foreign corporation incorporated under the laws of the state of Colorado with its principal place of business in Lakewood, Colorado.
General Steel seeks dismissal because the contract governing the sale requires the arbitration of any disputes in Denver, Colorado. Bragel opposes the motion, claiming that the arbitration clause is unconscionable because of the location required by the forum selection clause, the limitation of damages provision and General Steel’s history of deceptive conduct. Bragel argues that, as a result, the arbitration provision is unenforceable. Determining that the forum selection and damages limitation clauses do not invalidate the agreement to arbitrate and that General Steel’s history of misconduct is not relevant to this motion, the Court allows the motion to dismiss.
Background
The facts, as alleged by Bragel and taken as true for the purposes of this motion, are as follows.
*409 Bragel operates an automobile repair shop and used car dealership at the Trust property located on Dorchester Avenue. In October of 2001, Bragel responded to General Steel’s advertisements on WRKO for discounted, prefabricated steel buildings. General Steel quoted Bragel a price of $15,540.00 for a 40’ by 50’ by 22’ steel building. Bragel claims that he specified that the building had to be a clear-span building because of the intended use. General Steel claimed that the price quoted in October of2001 was for a steel building containing one steel column, which was unacceptable to Bragel. General Steel told Bragel that a clear span building would cost an additional $11,500.00. In July 2003, General Steel altered the initial quote to $48,732.00 for a different building, measuring 40’ by 50’ by 34’, and containing a mezzanine. The change in the dimensions of the building forced Bragel to amend the building permit. In February 2004, General Steel informed Bragel that the price for a clear-span building would increase the price by another $11,500.00.
In February 2004, Bragel, acting through his wife, entered into a contract with General Steel on behalf of the Trust. Bragel forwarded $14,725.00 to General Steel as a deposit. The total cost of the building had by that time increased to $61,040.00. After signing the contract, Bragel learned that the doors and windows were not included in the price, and that if he did not buy them from General Steel (apparently at a higher than average price) the warranty would be void. The doors and windows cost Bragel $30,000.00, increasing the total cost of the building to $94,367.00 — a far ciy from the original quote of $15,540.00.
On April 16, 2004, Bragel made a payment of $9,008.00 to General Steel. The building was scheduled for delivery in the spring of 2004, but as of July 2004, no deliveries had been made and Bragel had not received a complete set of plans, despite many calls to General Steel. Bragel and his wife continued to contact General Steel for several months, to no avail. Several times General Steel promised that the building would be delivered, but no delivery was made. Bragel told General Steel that he wanted to cancel his order, but General Steel told him that the order could not be cancelled and he would forfeit his deposits if he attempted to do so.
Finally, on March 30, 2005, General Steel sent an incomplete delivery of steel; it lacked the necessary components for a clear span building. Bragel paid $59,633.83 for the delivery, but withheld $11,000.00, which he offered to place in escrow until he received the missing components. General Steel insisted that a second delivery was slated to arrive, but it never did.
General Steel declared that Bragel had breached the contract and refused to either deliver the remainder of the building components, or to return Bragel’s deposits. On April 12, 2005, Bragel sent a Chapter 93A demand letter to General Steel. General Steel did not respond within the requisite ninety-day period; however, General Steel’s counsel did eventually send a letter to Bragel informing him that General Steel considered him to be in breach of contract. Bragel then instituted this suit, alleging breach of contract, fraud and deceit, and violations of Chapter 93A, but not unconscionability.
General Steel moved to dismiss, seeking enforcement of the arbitration clause in Paragraph 15 of the February 2004 contract. The provision, printed in small, densely packed type, states that “Any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be settled by arbitration administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules ... the place of arbitration shall be Denver, Colorado.” The same provision states that the “agreement shall be governed by and interpreted in accordance with the laws of the State of Colorado.” The arbitrator shall not have the authority “to award punitive, consequential or other damages not measured by the prevailing party’s actual damages, except as may be required by statute.” (Emphasis added.)
Much of Bragel’s argument centers on the unfair or deceptive business practices that he contends General Steel has employed. As evidence of these practices, he offers the actions that various authorities, including the Attorneys General of Colorado, California, and New Mexico, have taken against General Steel. He points to a decision by Judge R. Brooke Jackson of Colorado’s Jefferson County District Court in December 2004.[1] See State of Colorado v. Gen. Steel Domestic Sales, LLC, No. 04 CV 143, 2004 Colo.Dist.Ct. (Jefferson County, Dec. 7, 2004) (the Colorado decision).
In that case, the Colorado Attorney General brought an action against General Steel under the Colorado Consumer Protection Act (Colorado Act) alleging that General Steel used deceptive practices in the marketing and sale of prefabricated steel buildings to consumers. Following a seven-day trial, Judge Jackson concluded that “beyond any legitimate question, General Steel for years engaged in sales practices that were riddled with misrepresentations and omissions.” The judge detailed the ways in which General Steel engaged in deceptive sales and marketing practices in violation of the Colorado Act. General Steel knowingly made false representations as to the characteristics and sources of goods and services, made false or misleading statements as to the price of goods or services, and failed to disclose material facts for the purpose of inducing consumers to enter into contracts. The Court ordered General Steel to revise its purchase order form in order to make it more legible. General Steel was required to set forth the conditions in at least twelve-point font, with spaces between the paragraphs, and to require customers to initial each condition separately. The Court did not require General Steel to change the substance of the contractual *410 provisions, however, and did not note any problems with the arbitration clause or the limitation of damages provision.
Bragel relies on the Colorado decision in his argument, and focuses on the circumstances surrounding the formation of the contract as evidence that the contract as a whole, including the arbitration provision, is unconscionable. He objects to the terms of the contract that require him to accept the goods and pay in full upon delivery, then bring arbitration proceedings against General Steel as his only means of recourse. Bragel objects to the location for arbitration, claiming that the selection of Denver is unconscionable, because of the distance between Colorado and Massachusetts and because he claims that the expense of arbitrating in Colorado will effectively deny him a remedy.
Discussion
1. Enforceability of Arbitration Claus es — Generally
Congress, in enacting the Federal Arbitration Act (Federal Act), 9 U.S.C. §§ 1-16, sought to overcome the judiciary’s reluctance to enforce arbitration agreements and firmly established a national policy in favor of arbitration. Buckeye Check Cashing, Inc. v. Cardegna, 126 S.Ct. 1204, 1207 (2006). Because one of the purposes of the Federal Act is to place arbitration agreements on equal footing with all other contracts, the Supreme Court has consistently struck down state laws that apply special requirements to the enforceability of arbitration clauses. Doctor’s Assocs., Inc. v. Casarotto, 517 U.S. 681, 686 (1996); Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 281 (1995). Also, “any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself, or an allegation of waiver, delay, or a like defense to arbitrability.” Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983).
Under the Federal Act, an arbitration clause “shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.” 9 U.S.C. §2. Generally applicable contract defenses, such as fraud, duress, or unconscionability are available to parties attempting to invalidate arbitration agreements. Doctor’s Assocs., Inc., 517 U.S. at 687. However, the Supreme Court has held that courts may only review the enforceability of an arbitration clause if a party has directly challenged the validity of the arbitration clause itself; otherwise, the arbitrator will act as gatekeeper and will determine the validity of the contract as a whole. Buckeye, 126 S.Ct. at 1210. In order to determine whether the clause is unconscionable, this Court must first decide whether Colorado or Massachusetts law applies. Within the arbitration clause, there is a choice of law provision, which provides that Colorado law will govern any disputes arising under the contract. Therefore, “in the absence of any substantial Massachusetts public policy reason to the contrary,” Massachusetts’ view of the enforceability of the arbitration clause is not controlling, and this Court should turn to the law of Colorado to determine whether the arbitration provision is unconscionable. See Jacobson v. Mailboxes Etc. U.S.A, Inc., 419 Mass. 572, 575 (1995) (finding that California law applied to forum selection clause because choice of law provision stated that the agreement was to be construed under and governed by the laws of the State of California); see also Morris v. Watsco, Inc., 385 Mass. 672, 674-75 (1982) (stating that Massachusetts courts have acknowledged and given effect to the law reasonably chosen by the parties to govern their agreement). Because there is no overriding public policy reason to require the application of Massachusetts law to the arbitration provision, this Court will follow Colorado law when determining the validity of the arbitration clause.
2. Unconscionability under Colorado Law
In Colorado, as in Massachusetts, arbitration is favored, and the court may only refuse to compel arbitration “upon a showing that there is no agreement to arbitrate or that the issue sought to be arbitrated is clearly beyond the scope of the arbitration provision.” Eagle Ridge v. Metropolitan Builders, 98 P.3d 915, 917 (Colo.App. 2004). The scope of the arbitration provision is to be interpreted so as to give effect to the reasonable expectations of the parties. Id. Colorado public policy strongly favors the resolution of disputes through arbitration, and “any doubts about the scope of an arbitration provision are to be resolved in favor of arbitration.” Rains v. Foundation Health Sys. Life & Health, 23 P.3d 1249, 1251 (Colo.App. 2001).
“In order to support a finding of unconscionability, there must be evidence of some overreaching on the part of one of the parties such as that which results from an inequality of bargaining power or under other circumstances in which there is an absence of meaningful choice on the part of one of the parties, together with contract terms which are unreasonably favorable to that party.” Davis v. M.L.G. Corp., 712 P.2d 985, 991 (Colo. 1986) (citing McMillion v. McMillion, 522 P.2d 125 (Colo.App. 1974)).[2]There must be more than mere disparity of bargaining strength to support a finding of unconscionability, and the doctrine is not intended to remedy what amounts to no more than a “simple old-fashioned bad bargain.” University Hill Beauty Academy Corp. v. Mountain States Telephone and Telegraph Corp., 38 Colo.App. 194, 196 (1976). The enforcement of the clause must lead to a result so unreasonable that any fair-minded person would be gripped with a profound sense of injustice upon hearing of the result. Id, at 197. Parties should feel free to enter into contracts, even those that appear to be unfavorable or unfair to one party, without fear of *411 courts subsequently altering or refusing to enforce their agreements out of paternalism. Id.
There are a number of factors that Colorado courts employ when considering the unconscionability of a contract provision, including whether the contract is a standardized agreement executed by parties of unequal bargaining strength; lack of opportunity to read or become familiar with the document before signing it; use of fine print in the provision; evidence that the provision itself is commercially unreasonable, or lack of evidence that it is commercially reasonable; the terms of the contract, including whether it is substantively unfair; the relationship of the parties; and all of the circumstances surrounding the formation of the contract. Davis, 712 P.2d at 991 (internal citations and quotations omitted).
The Enforceability of this Arbitration Clause
a.Forum Selection
There is nothing inherently unreasonable about the choice of Colorado as the forum for arbitration; it is not so remote a location that it acts as a shield against liability, as Bragel argues. It is not unexpected that a business would require arbitration to take place in its home state; to the contraiy, what business wouldn’t choose its home state?
General Steel’s selection of its home state as the forum does not render the arbitration clause unconscionable nor would it justify a refusal to enforce the clause.
b.Damages Limitation
The limitation of damages provision contained in Paragraph 15 is not unconscionable on its face, nor does it absolutely limit Bragel’s damages to actual damages. The arbitrator may provide remedies as he or she sees fit, and may award punitive damages if required to do so by statute. The arbitrator may award treble damages under the Colorado Act, C.R.S. 6-1-113, which, like its Massachusetts counterpart, Chapter 93A, provides for treble damages for consumers injured by a defendant’s deceptive trade practices. See the Colorado Act, §6-1-113. Therefore, the arbitrator is empowered to fashion an adequate remedy.
c.General Steel’s Misconduct
Apart from the forum selection and damages limitation issues, the essence of Bragel’s complaint is that General Steel engaged in unfair, deceptive, and fraudulent business practices. Bragel argues that he has directly attacked the arbitration clause, but encourages this Court to scrutinize the provision for unconscionability in light of the contract as a whole, rather than viewing it in isolation. This would be to his advantage given the context in which the contract was entered into and General Steel’s histoiy of misconduct. The circumstances surrounding the formation of the contract, not the terms of the contract, are really what Bragel argues. The terms of the contract are not so unusual, oppressive, or lopsided, that they mandate a finding of unconscionability. The Colorado decision did not order General Steel to change the substantive terms of the contract; rather the court required General Steel to alter the format of the contract so as to clearly present the terms to consumers. This supports the inference that while General Steel’s behavior might be deceptive, the terms of the contract are not unconscionable.
As Judge Jackson found, General Steel engaged in deceptive and unfair conduct. The issue on this motion, however, is whether the Defendant’s behavior rendered the arbitration provision unconscionable, and whether, in light of the relevant Colorado law, this Court should find that the Defendant’s conduct was so shocking and patently unreasonable that enforcing the arbitration clause would cause a decent, fair-minded person to be possessed with a “profound sense of injustice.”
It does not. Bragel may raise all of his claims before the arbitrator.
Conclusion
Declining to find that the forum selection or damages limitation clauses or General Steel’s deceptive conduct invalidate the agreement to arbitrate, General Steel’s motion to dismiss and for enforcement of the arbitration clause is ALLOWED.

General Steel appealed the district court’s decision, but the appeal was dismissed without prejudice on procedural grounds. See State v. Gen. Steel Domestic Sales, LLC, 129 P.3d 1047 (Colo.App. 2005).

The standard for determining unconscionability in Massachusetts is similar to Colorado law, and would require the same outcome. In Massachusetts, unconscionability is determined on a case-by-case basis “with particular attention to whether the challenged provision could result in oppression and unfair surprise to the disadvantaged parly and not to allocation of risk because of ‘superior bargaining power.’ ” Zapaiha v. Dairy Mart, Inc., 381 Mass. 284, 292-93 (1980). “If the sum total of the provisions of a contract drive too hard a bargain, a court of conscience will not assist in its enforcement.” Waters v. Min Ltd., 412 Mass. 64, 68 (1992).