Opinion by CHIEF JUDGE LOEB
*712 ¶ 1 Defendants, Metropolitan Homes, Inc., Metro Inverness, LLC, Greg Krause, and Peter Kudla, appeal the district court's order denying their motion to compel arbitration in this construction defect action filed by plaintiff, Vallagio at Inverness Residential Condominium Association, Inc. We affirm in part, reverse in part, and remand with directions.
I. Background
¶ 2 Vallagio at Inverness Residential Condominium Association, Inc. (Association) brought this action against defendants, alleging construction defects in the Vallagio at Inverness residential development project (Project). The Project was organized as a common interest community under the Colorado Common Interest Ownership Act (CCIOA). Metro Inverness was the Project's developer and declarant. According to the complaint, Metropolitan Homes was Metro Inverness' manager and the Project's general contractor. Krause and Kudla were declarant-appointed members of the Association's board before control of the Association was transferred to unit owners who bought homes in the Project.
¶ 3 Metro Inverness drafted and recorded the Project's original declaration in 2007. The declaration contained a general provision governing amendments. That provision, section 13.1, allowed the unit owners to amend the declaration by a 67% vote and also required a consenting vote of the declarant. In that regard, the provision gave the declarant, Metro Inverness, the right to consent (or withhold consent) to amendments, but stated that the right of consent would expire after the last unit was sold to an owner other than the declarant.
¶ 4 Section 16.6 of the declaration included a mandatory arbitration provision specifically for construction defect claims. That section stated that its provisions "shall not ever be amended without the written consent of Declarant and without regard to whether Declarant owns any portion of the Real Estate at the time of the amendment."
¶ 5 Metro Inverness turned control of the Association's board of directors over to the Project's unit owners in 2010. It sold the last unit to a non-declarant owner in 2012.
¶ 6 In September 2013, at least 67% of the Project's unit owners voted to amend the declaration to remove section 16.6 in its entirety, including the arbitration provision. The unit owners did not obtain Metro Inverness' consent to amend that section.
¶ 7 Soon after the declaration was amended, the Association filed this action against defendants in district court. The Association asserted a number of claims related to alleged construction defects, including negligence, negligence per se, negligent repair, breach of implied warranty, misrepresentation/non-disclosure, violations of the Colorado Consumer Protection Act (CCPA), and breach of fiduciary duty. The Association asserted these claims on its own behalf, seeking damages based on its responsibility to maintain and repair common areas of the Project. It did not bring any claims on behalf of individual unit owners, nor did any such owners join as plaintiffs in this action.
¶ 8 Defendants moved to compel arbitration, relying on the arbitration provision in section 16.6 of the original declaration. Defendants argued that the amendment purporting to remove that provision was invalid because Metro Inverness did not consent to it. Defendants also argued that the arbitration provisions in the individual unit owners' purchase agreements required arbitration of the Association's claims.
¶ 9 In its response, the Association argued that (1) the declaration was validly amended to remove the arbitration provision; (2) the declarant consent requirement in section 16.6 violated CCIOA; (3) Metropolitan Homes, Krause, and Kudla lacked standing to enforce the declaration's arbitration provision; (4) the Association was not bound by individual unit owners' purchase agreements; and (5) the CCPA claims were non-arbitrable.
¶ 10 The district court denied defendants' motion to compel arbitration in a written *713 order. The court concluded that Metro Inverness' consent was not required to remove the arbitration provision for two reasons. First, the court determined that section 13.1 and section 16.6 contained conflicting requirements for amending the declaration, creating an ambiguity that must be construed against the drafter, Metro Inverness. Second, the court ruled that the declarant consent requirement in section 16.6 violated CCIOA and was, therefore, void and unenforceable. Based on these conclusions, the court ruled that the declaration was effectively amended to remove the arbitration provision. The court also ruled that the Association could not be bound by unit owners' purchase agreements because it was not a party to those agreements and because it asserted claims only on its own behalf, not on behalf of individual owners. Because it denied the motion to compel on those grounds, the court did not address the Association's arguments about defendants' standing or the arbitrability of the CCPA claims.
¶ 11 Defendants filed this interlocutory appeal of the district court's order pursuant to section 13-22-228(1)(a), C.R.S.2014.
II. Discussion
¶ 12 Defendants contend that the district court erred in denying their motion to compel arbitration. We agree in part. For the reasons set forth below, we conclude that the declaration requires arbitration of the claims against Metro Inverness. We remand to the district court for further proceedings to determine whether Metropolitan Homes, Krause, and Kudla have standing to compel arbitration under the declaration. We reject defendants' alternative argument they may compel arbitration of the Association's claims under the purchase agreements. We further reject the Association's contention that its CCPA claims are not arbitrable.
¶ 13 Arbitration is favored in Colorado as a convenient and efficient alternative to resolving disputes by litigation. City & Cnty. of Denver v. Dist. Court, 939 P.2d 1353, 1357, 1362 (Colo.1997). A valid and enforceable arbitration provision divests the court of jurisdiction over all arbitrable issues. Eychner v. Van Vleet, 870 P.2d 486, 489 (Colo.App.1993).
¶ 14 In considering a motion to compel arbitration, the district court must determine whether a valid agreement to arbitrate exists between the parties to the action and whether the issues being disputed are within the scope of the arbitration agreement. Id. The court may refuse to compel arbitration "only upon a showing that there is no agreement to arbitrate or if the issue sought to be arbitrated is clearly beyond the scope of the arbitration provision." Id. (internal quotation marks omitted).
¶ 15 The arbitrability of a claim or issue is a question of law that we review de novo. Eagle Ridge Condo. Ass'n v. Metro. Builders, Inc., 98 P.3d 915, 918 (Colo.App.2004), abrogated on other grounds by Ingold v. AIMCO/Bluffs, L.L.C. Apartments, 159 P.3d 116 (Colo.2007).
¶ 16 Here, the parties do not dispute on appeal that the original declaration contained a valid arbitration agreement or that the types of claims asserted in this case were construction defect claims covered by the arbitration agreement. Rather, the parties dispute whether the arbitration provision was validly removed by the unit owners' amendment of the declaration. Thus, to determine whether the declaration's arbitration agreement remains in force, we examine the validity of the amendment.
¶ 17 Defendants contend that the unit owners' purported amendment was ineffective because they failed to obtain Metro Inverness' consent. Defendants argue that, contrary to the district court's ruling, the declarant's consent was required to amend the arbitration provision under the terms of the original declaration, and the consent requirement was not void under CCIOA. For the reasons set forth below, we agree.
A. Interpretation of The Original Declaration's Amendment Provisions
¶ 18 Defendants first contend that the district court erred in concluding that the declaration's provisions governing amendments were ambiguous and in construing *714 that ambiguity against Metro Inverness. We agree. Based on the declaration's plain language, we conclude that amendments to the declaration's arbitration agreement required Metro Inverness' consent.
¶ 19 We apply ordinary principles of contract interpretation to determine whether a valid and binding agreement to arbitrate exists. City & Cnty. of Denver, 939 P.2d at 1363 ; Eagle Ridge, 98 P.3d at 917. Contracts must be construed as a whole and effect must be given to every provision, if possible. Holland v. Bd. of Cnty. Comm'rs, 883 P.2d 500, 505 (Colo.App.1994). It is a basic principle of contract law that specific clauses of a contract control the effect of general clauses. Id. ; see also E-470 Pub. Highway Auth. v. Jagow, 30 P.3d 798, 801 (Colo.App.2001), aff'd on other grounds, 49 P.3d 1151 (Colo.2002).
¶ 20 We will enforce the agreement as written unless there is an ambiguity in the language. Allen v. Pacheco, 71 P.3d 375, 378 (Colo.2003). A document is ambiguous if it is reasonably susceptible of more than one meaning. Cheyenne Mountain Sch. Dist. No. 12 v. Thompson, 861 P.2d 711, 715 (Colo.1993).
¶ 21 The declaration contains two provisions that bear on whether declarant's consent was required to amend the arbitration provision. Article XIII is titled "Amendment of Declaration" and sets forth a number of amendment provisions. Section 13.1, titled "General Procedure," states:
[T]he provisions of this Declaration and/or Condominium Map may be amended, in whole or in part, at any time and from time to time, by vote or agreement of Owners of Units holding at least 67% of the votes in the Association, and Declarant, provided that Declarant's right to consent under this Section 13.1 shall expire on the first to occur of the conveyance by a Declarant of all Units to Owners (other than a Declarant) or seven years after the date this Declaration is recorded in the real property records of Arapahoe County, Colorado.
Although Article XIII describes several exceptions to these procedures, none apply to amendment of the arbitration agreement.
¶ 22 Section 16.6 sets forth provisions specific to construction defect claims, including the requirement that such claims be submitted to binding arbitration. It includes a subsection titled "No Amendment; Enforcement by Declarant," which states:
The terms and provisions of this Section 16.6 inure to the benefit of Declarant, are enforceable by Declarant, and shall not ever be amended without the written consent of Declarant and without regard to whether Declarant owns any portion of the Real Estate at the time of such amendment. BY TAKING TITLE TO A UNIT, EACH OWNER ACKNOWLEDGES AND AGREES THAT THE TERMS OF THIS SECTION 16.6 ARE A SIGNIFICANT INDUCEMENT TO THE DECLARANT'S WILLINGNESS TO DEVELOP AND SELL THE UNITS AND THAT IN THE ABSENCE OF THE PROVISIONS CONTAINED IN THIS SECTION 16.6, DECLARANT WOULD HAVE BEEN UNABLE AND UNWILLING TO DEVELOP AND SELL THE UNITS FOR THE PRICES PAID BY THE ORIGINAL PURCHASERS.
¶ 23 We conclude that section 13.1 and section 16.6 are not ambiguous and that both may be given effect. Section 13.1, by its plain language, provides general procedures for amending the declaration. As part of these general procedures, it states that the declarant's right of consent ends when the last unit is sold. Section 16.6 sets out procedures specific to construction defect claims, and provides that amendments to that particular section will always require the declarant's consent, regardless of whether the declarant owns any units. Reading these sections together, we conclude that section 16.6 carves out a specific exception to the general provision that the declarant's right of consent ends when the last unit is sold. To conclude otherwise would require us to ignore the plain language of section 16.6's amendment provision, which is given particular emphasis in the document's text. Construing section 16.6 as an exception to the *715 general amendment provisions in section 13.1 allows both sections to be given effect. See Holland, 883 P.2d at 505.
¶ 24 Accordingly, we perceive no ambiguity regarding whether declarant's consent is required to amend the arbitration agreement. The specific provision in section 16.6 controls over the general provisions of section 13.1. Id . Therefore, we conclude that, as a matter of contract interpretation, the declaration required unit owners to obtain Metro Inverness' consent before amending the declaration to remove section 16.6, including its arbitration provision.
B. CCIOA
¶ 25 Defendants next contend that the district court erred in ruling that the declarant consent requirement for amendments of the arbitration agreement violated CCIOA and was void and unenforceable. We agree.
¶ 26 Statutory interpretation is a question of law that we review de novo. Klinger v. Adams Cnty. Sch. Dist. No. 50, 130 P.3d 1027, 1031 (Colo.2006). Our task is to give effect to the intent of the General Assembly. Id. We look first to the language of the statute, reading words and phrases in context and construing them according to their common usage. Id. Where the language is clear and unambiguous, we do not resort to other rules of statutory construction. Id .
¶ 27 In 1991, the General Assembly enacted CCIOA based on the Uniform Common Interest Ownership Act (1982) (Uniform Act). Hiwan Homeowners Ass'n v. Knotts, 215 P.3d 1271, 1273 (Colo.App.2009). CCIOA is intended "to establish a clear, comprehensive, and uniform framework for the creation and operation of common interest communities." § 38-33.3-102(1)(a), C.R.S.2014. The provisions of CCIOA may not be varied by agreement, and the rights conferred by it may not be waived. § 3833.3-104, C.R.S.2014.
¶ 28 The district court ruled that the declarant consent provision violated three sections of CCIOA: sections 38-33.3-302(2), 38-33.3-217(1)(a)(I), and 38-33.3-104, C.R.S.2014. We address each of these sections below. We also address the Association's additional argument that the provision violates CCIOA section 38-33.3-303(5), C.R.S.2014.
1. Section 38-33.3-302(2)
¶ 29 CCIOA section 38-33.3-302(2) provides: "The declaration may not impose limitations on the power of the association to deal with the declarant that are more restrictive than the limitations imposed on the power of the association to deal with other persons."
¶ 30 This section prohibits restrictions on an association's power that are "unique to the declarant." Triple Crown at Observatory Vill. Ass'n v. Vill. Homes of Colo., Inc., 2013 COA 150M, ¶ 40, 328 P.3d 275. In Triple Crown, a division of this court held that a mandatory arbitration provision in a declaration did not violate section 38-33.3-302(2) because the provision was not limited to claims against the declarant, but also applied to disputes between other parties. Id.
¶ 31 The provision at issue here is the requirement that the declarant consent to amendments of the arbitration provision, not the arbitration provision itself. We conclude that the declarant consent requirement does not violate section 38-33.3-302(2) because, with limited exceptions not applicable here, the Association has no power to amend the declaration.[1] CCIOA section 38-33.3-302(1) lists "powers" of a unit owners' association, and the enumerated powers do not include amending a declaration. Under the terms of the declaration in this case, the unit owners, not the Association, have the power to amend the declaration by a 67% vote. Thus, the declarant consent requirement does not impose any limitation on "the power of the association" under section 38-33.3302(2).
¶ 32 We are not persuaded by the district court's reliance on Association of Apartment Owners of Waikoloa Beach Villas v. Sunstone Waikoloa, LLC, 307 P.3d 132 (Haw.2013). The declaration in that case imposed numerous requirements on the association *716 that applied only to arbitration or litigation against the declarant. Id. at 140. Because the declaration limited the association's power to act in proceedings against the declarant but not others, the Hawaii Supreme Court held that those provisions violated a statutory provision similar to CCIOA section 38-33.3302(2). Id .
¶ 33 Waikoloa is of limited applicability, however, because it did not involve a declarant consent requirement like the one at issue here. We conclude that requiring declarant consent for amendments does not limit any "power" of the Association-an issue that was not addressed in Waikoloa . Furthermore, Waikoloa is distinguishable because, as set forth in greater detail below, the arbitration agreement in this case is not limited to claims against the declarant. Thus, Waikoloa 's reasoning is inapposite here.
¶ 34 For these reasons, we conclude that the declarant consent requirement does not violate section 38-33.3-302(2).
2. Section 38-33.3-217(1)(a)(I)
¶ 35 CCIOA section 38-33.3-217 governs amendments to declarations. Subject to certain exceptions not relevant here, it provides:
[T]he declaration ... may be amended only by the affirmative vote or agreement of unit owners of units to which more than fifty percent of the votes in the association are allocated or any larger percentage, not to exceed sixty-seven percent, that the declaration specifies. Any provision in the declaration that purports to specify a percentage larger than sixty-seven percent is hereby declared void as contrary to public policy, and until amended, such provision shall be deemed to specify a percentage of sixty-seven percent. The declaration may specify a smaller percentage than a simple majority only if all of the units are restricted exclusively to nonresidential use.
§ 38-33.3-217(1)(a)(I).
¶ 36 The Association contends, and the district court ruled, that the declarant consent requirement violates this section because it effectively requires more than a 67% vote of unit owners to amend the declaration. We disagree.
¶ 37 We conclude that section 38-33.3-217(1)(a)(I) does not prohibit a declaration from requiring declarant consent for an amendment. In our view, this section merely addresses the permissible percentages of unit owners' votes that may be required to amend a declaration. Section 38-33.3-217(1)(a)(I) does not explicitly preclude a declaration from imposing additional requirements for amendments, and the Association has not cited any Colorado appellate authority holding that a declarant consent requirement violates this statutory section. Indeed, other provisions of section 38-33.3-217 contemplate requirements of consent or approval by parties other than the unit owners. See § 38-33.3-217(1)(b)(I) (setting forth notification procedures applicable "[i]f the declaration requires first mortgagees to approve or consent to amendments").
¶ 38 We thus conclude that section 38-33.3-217(1)(a)(I) merely governs requirements for unit owners' voting percentages and does not prohibit a declaration from imposing an additional requirement of declarant consent for amendments.
3. Section 38-33.3-104
¶ 39 CCIOA section 38-33.3-104 states that "[a] declarant may not act under a power of attorney or use any other device to evade the limitations or prohibitions of this article or the declaration."
¶ 40 In ruling that the declarant consent requirement violated this section, the district court relied on the comments to the corresponding section of the Uniform Act, which state:
One of the consumer protections in this Act is the requirement for consent by specified percentages of unit owners to particular actions or changes in the declaration. In order to prevent declarants from evading these requirements by obtaining powers of attorney from all unit owners, or in some other fashion controlling the votes of unit owners, this section forbids the use by a declarant of any device to evade the limitation or prohibition of the Act or of the declaration.
*717 § 1-104 cmt. 2 (1982) (emphasis added). The court ruled that the declarant consent provision "would allow Defendant Metro Inverness to control the votes of the unit owners, which contravenes the purpose of ... CCIOA."
¶ 41 Contrary to the district court's ruling, we conclude the declarant consent requirement does not allow Metro Inverness to control the votes of unit owners. Section 13.1 of the declaration requires the vote of at least 67% of the unit owners to amend the declaration, and the declarant consent provision in section 16.6 does not alter that requirement. It does not provide a mechanism for Metro Inverness to control how unit owners vote, nor does it allow Metro Inverness to unilaterally amend that section without the unit owners' consent. It merely imposes an additional requirement that Metro Inverness also consent before section 16.6 may be amended. Because the declarant consent requirement does not allow Metro Inverness to control unit owners' votes or amend the declaration without their consent, the concerns expressed in the commentary to the Uniform Act are not, in our view, implicated here.
¶ 42 Nor are we persuaded that the declarant consent requirement contravenes CCIOA's purpose. The declaration requires declarant consent only to amend provisions that deal with alternative dispute resolution for construction defect claims. CCIOA endorses the use of alternative dispute resolution and specifically allows declarations to mandate binding arbitration. See § 38-33.3-124(3), C.R.S.2014 ("The declaration ... may specify situations in which disputes shall be resolved by binding arbitration."); § 38-33.3-124(1)(a)(II) ("The general assembly hereby specifically endorses and encourages associations, unit owners, managers, declarants, and all other parties to disputes arising under this article to agree to make use of all available public or private resources for alternative dispute resolution."). Given this statutory language and the public policy in Colorado favoring arbitration, see City & Cnty. of Denver, 939 P.2d at 1353, 1362, we cannot say that the declarant consent requirement in this case "evade [s] the limitations or prohibitions" of CCIOA, § 38-33.3-104.
¶ 43 The Association's reliance on Boulder Oaks Community Ass'n v. B & J Andrews Enterprises, LLC, 125 Nev. 397, 215 P.3d 27 (2009), is not persuasive. In that case, the declarant reserved the right to consent to declaration amendments only if the declarant owned units. Id. at 33. The Nevada Supreme Court held that the consent provision violated Nevada's version of the Uniform Act, which prohibited declarant-owned units from constituting a voting class. Id. at 33-34 Class voting is not at issue here; thus, Boulder Oaks is inapplicable.
¶ 44 Accordingly, we conclude that that provision does not violate CCIOA section 38-33.3-104.
4. Section 38-33.3-303(5)
¶ 45 Finally, we reject the Association's argument that the declarant consent requirement violates CCIOA section 38-33.3-303(5) by allowing Metro Inverness to control the Association after the period of declarant control expires.
¶ 46 Section 38-33.3-303(5) deals with a declarant's right to appoint and remove members of the association's executive board. It provides that if the declarant voluntarily surrenders that right before termination of the declarant control period, the declarant may retain a right of consent to specified actions of the association for the remainder of that period. § 38-33.3-303(5). As set forth above, amendments to a declaration are made by unit owners, not the association. Thus, CCIOA provisions regarding declarant consent to an association's actions are not pertinent to the issue before us. Section 38-33.3-303(5) does not deal with amendments to declarations, and the Association has cited no cases to support applying it in this context.
¶ 47 For the reasons set forth above, we conclude that the declarant consent provision is enforceable and consistent with CCIOA. Because the unit owners did not obtain Metro Inverness' written consent, their attempt to remove the declaration's arbitration provision was ineffective. Accordingly, we conclude *718 that the declaration still contains a valid and enforceable arbitration agreement as set forth in section 16.6.
C. Who May Enforce the Declaration's Arbitration Agreement
¶ 48 Having concluded that a valid arbitration agreement exists, we must next determine who may enforce the agreement.
¶ 49 The parties do not dispute that Metro Inverness, as the declarant, has standing to enforce the declaration's arbitration agreement. However, the Association contends that Metropolitan Homes, Krause, and Kudla lack standing to enforce the arbitration provision because they are not parties to the declaration. Defendants argue that they may compel arbitration as third-party beneficiaries or, alternatively, under the doctrine of equitable estoppel. The district court did not address these issues in its order because it determined that the declaration no longer contained an enforceable arbitration provision. For the reasons set forth below, we remand to allow the district court to resolve these issues.
1. Third-Party Beneficiaries
¶ 50 We conclude that the record is insufficient for us to determine whether Metropolitan Homes, Krause, and Kudla were third-party beneficiaries of the declaration's arbitration agreement.
¶ 51 A person who is not a party to an agreement containing an arbitration provision generally lacks standing to compel, and is not subject to, arbitration. Eagle Ridge, 98 P.3d at 917 ; Everett v. Dickinson & Co., 929 P.2d 10, 12 (Colo.App.1996). However, a non-party, such as a third-party beneficiary, may fall within the scope of an arbitration agreement and compel its enforcement if that is the intent of the parties. Allen, 71 P.3d at 379-80 ; Eagle Ridge, 98 P.3d at 917. We resolve doubts about the scope of the arbitration clause in favor of arbitration. Allen, 71 P.3d at 378.
¶ 52 A third-party beneficiary may enforce a contract only if the parties intended to confer a benefit on the third party when contracting. Everett, 929 P.2d at 12. "While the intent to benefit the nonparty need not be expressly recited in the contract, the intent must be apparent from the terms of the agreement, the surrounding circumstances, or both." Harwig v. Downey, 56 P.3d 1220, 1221 (Colo.App.2002) ; accord Jefferson Cnty. Sch. Dist. No. R-1 v. Shorey, 826 P.2d 830, 843 (Colo.1992).
¶ 53 We begin our analysis by examining the language of the declaration. As discussed above, section 16.6 of the declaration governs construction defect claims and requires that such claims be submitted to binding arbitration. Section 16.6(h) states that "[t]he terms and provisions of this Section 16.6 inure to the benefit of Declarant, [and] are enforceable by Declarant." The term "Declarant" is defined elsewhere in the declaration as Metro Inverness and its successors and assignees. Metropolitan Homes, Krause, and Kudla do not argue that they fit that definition.
¶ 54 Nevertheless, other language in section 16.6 indicates that the arbitration agreement may apply to at least some parties other than the declarant. Section 16.6 broadly states that its procedures "shall govern all Construction Defect Claims whether brought by the Association or by any Owner." The arbitration provision itself refers to claims against "Respondent," which is defined earlier in the section as "Declarant and any contractor against whom such Construction Defect Claim is targeted." Thus, the arbitration provision, by its terms, encompasses claims against some third parties.
¶ 55 However, the record on appeal is insufficient for us to determine whether Metropolitan Homes, Krause, and Kudla are intended third-party beneficiaries under those provisions. The relationship among the defendants and their respective roles in the development and construction of the Project are unclear. Thus, determining whether the arbitration provision applies to them may require factual findings. Moreover, on the record before us, we cannot evaluate whether other surrounding circumstances indicate that those defendants are intended third-party beneficiaries of the arbitration agreement. We conclude that the district court is *719 best situated to make a determination on these issues.
¶ 56 Defendants point to section 16.5(a) of the declaration, titled "Self-Help," which states: "Declarant, the Association, or any authorized agent of either of them may enforce by self-help any of the provisions, covenants, conditions, restrictions, and equitable servitudes contained in this Declaration to the fullest extent permitted by this Declaration and the law" (emphasis added). This provision appears to be limited to self-help enforcement, not arbitration. It is also unclear from the record whether Metropolitan Homes, Krause, and Kudla are "authorized agents" of Metro Inverness. Thus, defendants' arguments under this provision are also best resolved by the district court.
¶ 57 For these reasons, we remand to the district court for a determination of whether Metropolitan Homes, Krause, and Kudla are third-party beneficiaries of the declaration with standing to enforce its arbitration agreement.
2. Equitable Estoppel
¶ 58 Because the third party beneficiary issue must be resolved by the district court on remand, we decline to address defendants' alternative argument regarding equitable estoppel here. We remand that issue for the district court to consider it as well, if necessary. In addressing equitable estoppel, the court and the parties should take into account Meister v. Stout, 2015 COA 60, 353 P.3d 916.
D. Arbitration Provisions in Purchase Agreements
¶ 59 In addition to the declaration, defendants also rely on the arbitration provisions in individual unit owners' purchase agreements. The applicability of the purchase agreements may arise on remand if the district court rules that Metropolitan Homes, Krause, and Kudla lack standing to enforce the declaration's arbitration provision. Therefore, we address defendants' arguments regarding the purchase agreements here.
¶ 60 Defendants contend that the district court erred in ruling that that the Association was not bound by individual unit owners' purchase agreements. We disagree.
¶ 61 As set forth above, a non-party to an agreement containing an arbitration provision generally may not compel or be subject to arbitration, unless that was the intent of the parties. See Eagle Ridge, 98 P.3d at 917. It is undisputed that neither the Association nor the three non-declarant defendants were parties to the purchase contracts between Metro Inverness and individual buyers.
¶ 62 The arbitration provision in those contracts states:
This provision covers all claims or disputes between Buyer and Seller that in any way arise out of, are related to, or involve this Contract, or its negotiation or allege breach, or the construction, design, inspection, geotechnical analysis, and/or sale of the Property. Any claims or disputes of Buyer or Seller that may be intertwined or connected with the above claims or disputes shall also be resolved in accordance with this Section 19. Buyer and Seller further agree that all employees or agents of Seller are third-party beneficiaries of this provision and that the terms and conditions hereof, including the arbitration provision, shall also apply to Seller's employees and agents.
¶ 63 Under the plain language of this provision, the arbitration clause only applies to disputes between the buyer and the seller, or seller's employees and agents. Although the provision specifically states that it applies to the seller's employees and agents as third-party beneficiaries, it contains no such reference to the Association. Thus, the plain language of the arbitration agreement does not indicate any intent to cover claims brought by the Association.
¶ 64 As the district court noted in its order, the Association brings claims on its own behalf, not on behalf individual unit owners. Moreover, the Association does not rely on the individual purchase contracts as a basis for its claims. Rather, its claims arise from independent tort duties and Colorado statutes. See, e.g., *720 A.C. Excavating v. Yacht Club II Homeowners Ass'n, 114 P.3d 862, 867, 870 (Colo.2005) (homebuilders have a duty of care independent of contract); Hoang v. Arbess, 80 P.3d 863, 867-70 (Colo.App.2003) (builder's employees may be personally liable in tort for negligent construction, negligent misrepresentations, and CCPA violations). Therefore, we agree with the district court's conclusion that "because Plaintiff asserts rights on its own behalf rather than in its representative capacity, it cannot be bound to purchase agreements to which it was not a party."
¶ 65 We are not persuaded that the Association's claims arise from the purchase agreements because the complaint mentions defects in individual units. As we read the complaint, the Association seeks damages only on its own behalf based on its responsibility to repair defects in common areas of the Project and resulting damage to other parts of the Project caused by those defects. The complaint does not assert individual unit owners' claims for damages.
¶ 66 In sum, the Association is not a party to the individual unit owners' purchase agreements, its claims do not arise from those agreements, and it does not bring claims on behalf of individual unit owners. Under these circumstances, we conclude that the Association cannot be bound by the arbitration provisions in individual unit owners' purchase agreements. Accordingly, we affirm the district court's ruling that the purchase agreements do not require arbitration in this case.
E. CCPA Claims
¶ 67 Finally, we reject the Association's contention that its CCPA claims are non-arbitrable.
¶ 68 The district court did not rule on this issue because it denied defendants' motion on other grounds. Because this raises a pure issue of statutory interpretation that we review de novo, see Klinger, 130 P.3d at 1031, we resolve the issue here rather than remanding to the district court. See Munoz v. Indus. Claim Appeals Office, 271 P.3d 547, 550 (Colo.App.2011).
¶ 69 The CCPA states that its provisions "shall be available in a civil action for any claim against any person who has engaged in or caused another to engage in any deceptive trade practice listed." § 6-1-113(1), C.R.S.2014 (emphasis added). The Association contends that this section precludes arbitration of CCPA claims, relying primarily on Lambdin v. District Court, 903 P.2d 1126 (Colo.1995).
¶ 70 In Triple Crown, 2013 COA 150M, 328 P.3d 275, a division of this court rejected a similar argument by an association that CCPA claims were non-arbitrable. We find its analysis persuasive here:
In arguing that this right precludes mandatory arbitration, the Association's reliance on Ingold v. AIMCO/Bluffs, L.L.C. Apartments, 159 P.3d 116 (Colo.2007), and Lambdin v. District Court, 903 P.2d 1126 (Colo.1995), is unpersuasive. In both cases, the supreme court's analysis turned on the respective statutes' nonwaiver provisions. In contrast, the CCPA does not include a nonwaiver provision.
Therefore, we decline to extend the reasoning of Ingold and Lambdin to the CCPA. Accordingly, we conclude that the right to a civil action provided by the CCPA does not invalidate enforcement of [the arbitration clause].
Id. at ¶¶ 44-45 (citations omitted). Contrary to the Association's argument, we perceive no inconsistency between the analysis in Triple Crown and the supreme court opinions on which it relies.
¶ 71 The General Assembly could have explicitly provided that the right to a "civil action" under CCPA section 6-1-113 was non-waivable, but it has chosen not to do so. Therefore, we conclude that the Association's CCPA claims are subject to the arbitration agreement in the declaration.
III. Conclusion
¶ 72 The order is reversed in part and affirmed in part, and the case is remanded for entry of an order compelling arbitration of the Association's claims against Metro Inverness and for further proceedings to determine *721 whether the claims against the other defendants must be arbitrated.
JUDGE STERNBERG* and JUDGE VOGT* concur.

CCIOA section 38-33.3-217(1)(a)(III)(C), C.R.S.2014, provides a list of the specific provisions under which an association is permitted to amend the declaration.

Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5 (3), and § 24-51-1105, C.R.S.2014.